UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| ELDER TAYLOR FINE ART LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  7:23cv00168 |
| | ) |
| MAHARAJAH COFFEE LLC and | ) JURY TRIAL DEMANDED |
| MANVEER SINGH | ) |
| | ) |
| Serve: | ) |
| Maharajah Coffee LLC | ) |
| 10601 Wellington Farm | ) |
| Terrace Chester, VA 23031 | ) |
| | ) |
| Serve: | ) |
| Manveer Singh | ) |
| 10601 Wellington Farm | ) |
| Terrace Chester, VA 23031 | ) |
| | ) |
| Defendants. | ) |

**<u>VERIFIED COMPLAINT</u>**

Plaintiff, Elder Taylor Fine Art LLC ("ET Fine Art"), by counsel, hereby brings this lawsuit for copyright infringement against Defendants, Maharajah Coffee LLC ("Maharajah Coffee") and Manveer Singh ("Singh"), stating as follows.

**PARTIES, JURISDICTION & VENUE**

1. Elder Taylor Fine Art LLC is a single member limited liability company formed under the laws of the Commonwealth of Virginia with its principal place of business at 1858 Oilwell Rd., Blacksburg, VA 24060.

2. Megan Elder-Taylor ("Elder-Taylor") is the sole member of ET Fine Art.

3. Maharajah Coffee LLC is a limited liability company formed under the laws of the Commonwealth of Virginia with its principal place of business at 10601 Wellington Farm Terrace Chester, VA 23031.

4. Manveer Singh resides at 10601 Wellington Farm Terrace Chester, VA 23031 and is domiciled in the Commonwealth of Virginia.

5. On information and belief, Singh is the sole member and manager of Maharajah Coffee.

6. This is an action seeking damages from and injunctive relief against Singh and Maharajah Coffee for copyright infringement arising from their unlicensed reproduction, distribution, public display, and preparation of derivative works of thirteen custom animal graphics (collectively the "Artwork"). ET Fine Art created the Artwork as an independent contractor and holds federal copyright registrations for them. See Exhibits P1 – P13.

7. Personal jurisdiction is proper over Maharajah Coffee and Singh in that they each reside in Virginia, they operate from a principal place of business within the Commonwealth of Virginia, and they both have engaged in the acts complained of within the Commonwealth of Virginia. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred or a substantial part or all the property that is the subject of the action is situated in this venue.

8. This Court has subject matter jurisdiction over the copyright infringement claims brought in this Complaint pursuant to 28 U.S.C. § 1331 because they present a federal question.

9. This Court has subject matter jurisdiction over all other claims in this Complaint pursuant to 28 U.S.C. § 1367, because those claims are so related to the copyright infringement claims that they form the same case or controversy.

## FACTS

10. ET Fine Art creates and sells commissioned art, paintings, drawings, images, and other pictorial and graphic works.

11. Maharajah Coffee and Singh develop and sell coffee in Virginia.

12. In the early spring of 2020, Singh's wife, Monica Bhardwaj ("Bhardwaj"), contacted ET Fine Art for informal advice in dealing with a graphic artist, Amanda Seymour ("Seymour"), that Maharajah Coffee had hired to design custom animal graphics to place on bags of coffee.

13. Singh and Maharajah Coffee had become dissatisfied with Seymour's work and had hired a new graphic artist, Cindy, to make new graphics. Seymour, however, refused to hand over the native image files for graphics she had already created, explaining to Maharajah Coffee and Singh that they did not have any rights to the graphics she had created because they had neither contracted for a license nor signed a writing transferring the copyright. See Exhibit P14. Maharajah Coffee then paid an unknown amount of money to Seymour for a license permitting Maharajah Coffee to continue using the finished graphics she had created until a new graphic artist finished creating a final set of graphics.

14. Bhardwaj, acting on behalf of Singh and Maharajah Coffee, asked Elder-Taylor and ET Fine Art for advice about Seymour's graphics, and Elder-Taylor advised them that this was normal industry practice and that they needed to compensate a graphic artist not only for creating graphics, but had to also compensate the artist for rights to use the graphics in a particular way.

15. On April 29, 2020, Bhardwaj called ET Fine Art and its owner, Elder-Taylor, and asked if ET Fine Art would continue to provide advice and direction to Maharajah Coffee, Singh, and the new artist as Maharajah Coffee pursued new graphics for their coffee, and was now

offering to pay ET Fine Art for this advice. At this time, Bhardwaj was asking ET Fine Art and Elder-Taylor only to manage these efforts, and not to create any graphics.

16. On April 28, ET Fine Art signed a written contract with Maharajah Coffee, agreeing to oversee their rebranding efforts and to manage the current graphic artist in the creation of new graphics. The contract agreed that Maharajah Coffee would pay ET Fine Art, in general, $400 per month for its management of the rebranding efforts. The contract further provided that ET Fine Art would receive an "additional $200 biweekly" for its help in overseeing the graphic design. The contract also contained a clause expressly stating that any copyrighted works ET Fine Art created itself while under contract belonged to it. See Exhibit P15.

17. In May 2020, Maharajah Coffee hired a new graphic artist, Kully Rehal ("Rehal"), to create new illustrations for the coffee lines, while Sarah Ehlert ("Ehlert") had previously been hired as an employee to create the format and layout of the coffee labels in which the graphics would be integrated.

18. On May 19, ET Fine Art, increasingly frustrated with a lack of progress from Rehal, talked with Ehlert about ways to successfully complete the project. Ehlert suggested using the website Fiverr.com to find an artist. ET Fine Art expressed concern with using Fiverr because it primarily only offers limited licenses to the graphics developed through the site, but ET Fine Art stated that she hoped Maharajah Coffee would draft their contract differently so that Maharajah Coffee would receive the copyright or appropriate permission to any work produced for them.

19. On May 31, 2020, ET Fine Art received a single $400 payment for helping Maharaja Coffee navigate and manage Rehal and Ehlert.

20. By late June 2020, Rehal, who had now been tasked with both illustration and label design, had not produced more than a few composite sketches of possible illustrations and would only communicate with ET Fine Art, not Maharajah Coffee. As a result, Maharajah Coffee began searching for a new graphic designer, and ET Fine Art crafted a few informal graphics to help in the search. ET Fine Art reiterated to Maharajah Coffee that the informal graphics were not properly licensed and that Maharajah Coffee could not use them or any modification as the artwork for the labels.

21. By early July, Maharajah Coffee approached ET Fine Art, acting through Elder-Taylor, and asked if it would be willing to simply create the artwork itself. Elder-Taylor said she could not because she suffered from severe nerve pain that forced her to regulate how much work she could take on at any given time and because she did not have a computer capable of supporting the level of graphic design Maharajah Coffee needed.

22. For Elder-Taylor's birthday, Bhardwaj offered to gift her a computer as a token of their friendship. Elder-Taylor and Bhardwaj selected a computer worth around $4300, which was shipped to Singh's home. Upon receipt of the computer, Singh decided to keep the new computer and instead provided a used computer to Elder-Taylor.

23. On July 5, Rehal's was denied access to the Maharajah Coffee servers, where all graphics and digital label designs were stored, and the company's email without notifying her. Rehal contacted ET Fine Art, who was unaware that this had happened. ET Fine Art contacted Bhardwaj who explained that Rehal was being fired because her services were no longer required.

24. Maharajah Coffee asked ET Fine Art again if she would be willing to create the animal graphics. Eventually, ET Fine Art agreed and signed a contract to develop the graphics which

stated that ET Fine Art retained all copyright in its creations and which provided no language regarding licensing the work. Maharajah Coffee claimed the contract was written by their lawyers. Maharajah Coffee hired ET Fine Art to utilize its skill in graphic design and Megan's personal computer to create, remotely from ET Fine Art's business in Blacksburg, to create six intricate fine artwork graphics of different animals for Maharajah Coffee's coffee bags. ET Fine Art received no employee benefits and did not file any W-4 form with the Internal Revenue Service to indicate she was an employee of Maharajah Coffee. ET Fine Art had sole discretion over the required hours for its work and was only beholden to tentative deadlines for completion of the projects. No definite payment for ET Fine Art's work was agreed upon at this time.

25. Maharajah Coffee, within a few days, requested a seventh design as Singh had forgotten their flagship coffee, and, by July 12, Maharajah Coffee had requested four more custom artwork graphics, bringing the total number to eleven.

26. In August, ET Fine Art enlisted Ehlert to help with formatting the labels. Aside from Ehlert producing a bar code and finding an image of a map to use on the bags, ET Fine Art ended up completing the artwork and labels entirely on its own. Prior to September 2020, Maharajah Coffee requested a twelfth design.

27. By September 23, ET Fine Art had finalized the initial artwork, and, on October 2, ET Fine Art published and delivered eleven completed labels to Singh and Maharajah Coffee. These labels included a stylized logo depicting the "Maharajah Coffee" brand name, the name of the country from which the coffee beans are procured, and a unique fine art representation of of several animals designed and illustrated by ET Fine Art. These animals included a rhino, a frog, an elephant, a toucan, a turtle, a tiger, a wildebeest, a golden eagle, a jaguar, an ocelot,

and a lion. ET Fine Art holds federal copyright registrations for each of the eleven labels. See Exhibits P1-11.

28. Singh showed ET Fine Art's artwork to a shop owner in Richmond, who loved the labels and agreed to buy the coffee wholesale to sell in his store.

29. On October 14, ET Fine Art completed and delivered the twelfth label to Maharajah Coffee, which was crafted in the same design as the other eleven and featured a gorilla as the animal art. ET Fine Art holds a federal copyright registration for the twelfth label as well. See Exhibit P12.

30. To this point, ET Fine Art had only received one payment in May relating to its prior contract and management of other designers. It had not been paid for its design of the twelve labels, nor had it been paid for any license to use them commercially.

31. By November 2020, Maharajah Coffee had begun using each of the twelve labels on their coffee bags and were selling them in some capacity. By December, Singh was selling the coffee including ET Fine Art's copyright-protected artwork on the Maharajah Coffee website, in Virginia restaurants, and at pop-up markets around Richmond. See Exhibits P16–17.

32. In January 2021, Singh commissioned a large oil painting from ET Fine Art, which he told her he intended to hang in the public room of the Maharajah Coffee retail store in Richmond. ET Fine Art agreed to do the painting for a total compensation of $2470.55, with $1235 paid up front. Singh claimed to only be able to pay one thousand $1000 of the $1235 owed up front. ET Fine Art agreed to this and offered to allow Singh to pay the remaining $1470.55 upon delivery.

33. In March 2021, Maharajah Coffee paid Elhert to alter the scale and positioning of the Artwork to fit on K-Cup-style coffee pods. Elhert requested Elder-Taylor's feedback on the coffee pods, and Elder-Taylor stated that the pod's had numerous design problems and were not ready for production. Maharajah Coffee never paid or otherwise requested permission from ET Fine Art to do use her designs on these pods.

34. ET Fine Art completed the oil painting in May 2021, and Singh requested to pay by check rather than Venmo or PayPal as had once been discussed. ET Fine Art reluctantly agreed to drive to Richmond from Blacksburg to receive the check. Singh told Elder-Taylor he wanted to show ET Fine Art his store but ultimately decided to simply have ET Fine Art meet at his home.

35. On May 8, ET Fine Art travelled to Singh's home where Bhardwaj wrote a check to ET Fine Art for $1470. However, Singh told ET Fine Art that the check would bounce if ET Fine Art cashed it before the end of the week. ET Fine Art agreed to wait until May 29 to cash the check so that Maharajah Coffee's accounts would be funded. ET Fine Art also discovered that Maharajah had no retail store—although he made it appear on social media that he did—and that instead he operated in a residential neighborhood out of his garage.

36. Thereafter, Maharajah Coffee also requested two more labels, one featuring a llama and the other a sloth. ET Fine Art mentioned that she still had not been paid for the previous labels but agreed to create the two new animal graphics for $600 per label.

37. On June 1, ET Fine Art went to cash the check made to it for the oil painting, and Singh again told ET Fine Art the check would not clear as Singh had spent the funds on renovations of his home. Singh suggested a payment plan that Maharajah Coffee pay $400 by June 18, $500 by June 25, and $570 by June 30. ET Fine Art begrudgingly agreed.

38. On June 21, Singh told Elder-Taylor that he and Maharajah Coffee were broke and requested that ET Fine Art lower its price for the llama label, which he wanted ET Fine Art to complete first. After some negotiation, ET Fine Art agreed to only charge $500 for the llama label but that it would not work on the project until she had received payment in full for the oil painting.

39. By June 26, ET Fine Art had still not received payment for the oil painting and asked Singh again to pay. After ET Fine Art demanded payment, Maharajah Coffee paid a single installment of $500.

40. By June 30, ET Fine Art still had not received payment in full for the painting as had been agreed. Eventually, Bhardwaj paid ET Fine Art the remainder herself when ET Fine Art refused to break ground on the new artwork until she received payment in full.

41. In early July, Singh attempted to lower the price for the new artwork creation further, but ET Fine Art refused to go lower than $500. Singh agreed, and ET Fine Art modified a copy of the April 2020 contract to reflect the new job. The contract sent by ET Fine Art listed a $600 per label price. See Exhibit P18.

42. Maharajah Coffee did not sign the contract and wanted it to reflect the $500 price agreed upon in June. Maharajah Coffee also wanted to discuss licensing for the artwork. ET Fine Art decided they would need an entirely new contract that resolved all concerns. Neither the July 2021 contract nor any other iteration of it were ever signed.

43. By August, Singh had, without warning, revoked ET Fine Art's access to the Maharajah Coffee server and email, just as Singh had done with Rehal in 2020. This included access to all artwork that ET Fine Art had created for Maharajah Coffee, as ET Fine Art had saved its

9

work on that server to ensure that workflow was efficient. ET Fine Art had also saved and thus lost access to the July 2020 contract it had signed to create the original twelve labels.

44. On August 29, ET Fine Art, on a recorded phone conversation currently in ET Fine Art's possession, spoke with Bhardwaj about licensing for the labels. ET Fine Art explained again that she retained the copyright to all of the labels and that Maharajah Coffee needed to license the rights to use them. ET Fine Art suggested an annual licensing agreement which would require renewal at the end of each year. ET Fine Art offered to license all the labels it had created for a total of $5000 per year. ET Fine Art explained that any money already paid for the labels was for the creation of the labels and use during development. Bhardwaj acknowledged that she understood but would need to talk to Singh. ET Fine Art also requested that she be granted access to the Maharajah Coffee servers again so that ET Fine Art could deliver the new labels once she finished them. Bhardwaj said she would work on getting ET Fine Art access. No such access was ever returned to ET Fine Art.

45. Ultimately, ET Fine Art created one of the two art projects requested, a custom graphic of a llama. This brought the total number of animal graphics to thirteen. ET Fine Art holds a copyright registration for the llama design. See Exhibit P13.

46. On September 13, 2021, Bhardwaj emailed ET Fine Art asking if the terms discussed on the phone on August 29 amounted to a purchase of the copyright in the thirteen labels. ET Fine Art responded that the terms were for a license, not a copyright transfer. She reiterated that the computer she had been given was a personal gift, and that she had not collected a licensing fee for the previous year as a courtesy, even though she had a right to collect and she had extended no license nor sold ownership in the copyrights. See Exhibit P19.

47. On September 19, Bhardwaj replied and argued that the gifted computer was instead payment for the first seven labels created and that Maharajah Coffee only owed $2000 to use the rest of the labels in perpetuity. See Exhibit P20.

48. ET Fine Art later became aware that Singh had falsely claimed to the owner of a local café that Ehlert had created ET Fine Art's labels. The café also purchased a large shipment of the coffee.

49. ET Fine Art did not respond to the September 19 email from Bhardwaj, and, in January 2022, Bhardwaj attempted to pay ET Fine Art $2000 via Venmo as payment for unlimited usage rights to the labels. ET Fine Art immediately returned the payment, with Elder-Taylor explaining to Bhardwaj that she had not agreed to those terms.

50. Singh and Maharajah Coffee continued to use ET Fine Art's labels as the principal Artwork on their coffee until at least May of 2022 when they received a cease-and-desist letter by counsel representing ET Fine Art and Elder-Taylor. Maharajah Coffee and Singh continue to possess bags of coffee bearing the Artwork and have displayed, offered for sale, and sold those bags, even though they have no permission to use the artwork in this manner. On December 10, 2022, Elder-Taylor saw Maharajah Coffee's products still bearing her designs and being sold in a shop called Tea & Totally Gifts in Christiansburg, Virginia. Elder-Taylor photographed and recorded a video of the products on display at the store. See Exhibit P21.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

51. The preceding paragraphs are incorporated by reference.

52. Maharajah Coffee hired ET Fine Art for its skill and reputation as an artist to create the Artwork and had no control over how ET Fine Art conducted its work, other than by providing general guidance as any customer would.

53. Maharajah Coffee is not regularly engaged in graphic design work.

54. ET Fine Art used its personal computer and tools to create the Artwork, completed all work at its business in Blacksburg, had complete discretion over how many hours of work would be put into creating the Artwork, received no employee benefits, and neither filed nor received any employee tax forms in relation to its contracts with Maharajah Coffee.

55. As a result, ET Fine Art was an independent contractor when in created the Artwork, and it owns the copyrights in the Artwork. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). Further, the copyright registrations attached to this complaint serve as *prima facie* evidence of valid copyrights belonging to ET Fine Art, since the registration dates for all of the artwork are within five years of their publication dates, which are all reflected on the registration certificates attached to this Complaint. *See* 17 U.S.C. § 410(c).

56. Neither Singh nor Maharajah Coffee obtained any license to commercially use the Artwork on their coffee or to otherwise use the Artwork as described in this Complaint.

57. Maharajah Coffee directly reproduced ET Fine Art's Artwork for profit in the course of their business without ET Fine Art's authorization, in violation of ET Fine Art's exclusive rights to reproduce its copyrighted works under 17 U.S.C. § 106(1).

58. Maharajah Coffee directly distributed ET Fine Art's Artwork for profit without ET Fine Art's authorization, in violation of ET Fine Art's exclusive right to distribute its copyrighted works under 17 U.S.C. § 106(3).

59. Maharajah Coffee publicly displayed ET Fine Art's Artwork on the Maharajah Coffee website, on social media, and in retail/restaurant locations without ET Fine Art's authorization, in violation of ET Fine Art's exclusive right to publicly display its copyrighted works under 17 U.S.C. § 106(5).

60. These unlawful actions have damaged ET Fine Art because they have deprived it of it exclusive rights to exploit its copyrighted Artwork and have deprived it of the royalty fees it would have otherwise earned from licensing the Artwork if it had elected to do so.

61. Maharajah Coffee has profited substantially from its copyright infringement, both by selling the coffee bearing the Artwork and by creating long-term customer relationships by unlawfully using the Artwork.

62. On information and belief, Maharajah Coffee continues to profit from ET Fine Art's Artwork through the ongoing sale of coffee bags bearing the Artwork.

63. On information and belief, Maharajah Coffee continues to profit from ET Fine Art's Artwork through repeat customers, regardless of whether the Artwork is still being used, whose first purchases of Maharajah Coffee's were due to their initial interest in the Artwork.

64. ET Fine Art is entitled to an accounting of Maharajah Coffee's profits from November 2020 through the present in order to accurately assess damages under 17 U.S.C. 504.

65. ET Fine Art is entitled to recover both its actual damages and the ill-gotten profits Maharajah Coffee has earned through their infringement of ET Fine Art's copyrighted Artwork under 17 U.S.C. § 504(b).

66. On information and belief, Maharajah Coffee continues to infringe upon the exclusive rights ET Fine Art has in the Artwork, resulting in irreparable harm, which additionally entitles ET Fine Art to permanent preliminary and injunctive relief under 17 U.S.C. § 502.

67. Because Singh personally engaged in these acts, he is also liable for the direct copyright infringement described in this Count.

## COUNT II
## VICARIOUS COPYRIGHT INFRINGEMENT

68. The preceding paragraphs are incorporated by reference.

69. Singh, as the sole member and operator of Maharajah Coffee, (a) had the right and ability to control Maharajah Coffee's direct infringement of ET Fine Art's Artwork, and (b) Singh profited and will continue to profit from Maharajah Coffee's infringing conduct, making him personally liable for vicarious copyright infringement.

70. These acts of vicarious copyright infringement are in derogation of ET Fine Art's exclusive rights to the Artwork and have caused ET Fine Art irreparable harm as defined in Count I, entitling ET Fine Art to all of the relief requested in Count I.

## COUNT III
## BREACH OF CONTRACT

71. The preceding paragraphs are incorporated by reference.

72. In April 2020, Maharajah Coffee offered to pay ET Fine Art $600 month to oversee and manage a graphic design artist who was hired to create the Artwork for Maharajah Coffee's coffee bags.

73. ET Fine Art accepted this offer by signing a written contract and by conducting such work until the graphic designer was fired by Maharajah Coffee. Under this contract, ET Fine Art completed two months of work.

74. Maharajah Coffee made a single payment of $400 but never paid ET Fine Art the remaining $800 owed under this contract for two months of work.

75. In July 2020, Maharajah Coffee offered to pay ET Fine Art to create the Artwork for Maharajah Coffee's coffee bags. ET Fine Art accepted by signing a written agreement and by creating the Artwork. Maharajah Coffee agreed to pay ET Fine Art $600 per illustration. ET Fine Art was never paid the $7200 owed to it for creating 12 illustrations under this contract.

76. Maharajah Coffee never paid the full amounts owed to ET Fine Art under this contract, and, when ET Fine Art began to demand payment and licensing fees, Maharajah Coffee tried to change the terms of the deal to avoid paying the proper amounts.

77. Maharajah Coffee breached the contracts when they did not pay ET Fine Art for its work as agreed in the contracts from April 2020, July 2020, and January 2021 respectively.

78. In June 2021, ET Fine Art agreed to create a thirteenth illustration for $500. ET Fine Art was never paid for this work.

79. The breaches caused ET Fine Art damages of $8000, the amount Maharajah Coffee owes for the unpaid work.

80. ET Fine Art is further entitled to pre- and post-judgment interest on these damages.

## COUNT IV
## UNJUST ENRICHMENT

81. The preceding paragraphs are incorporated by reference.

82. This Count is plead in the alternative to Count III.

83. ET Fine Art managed a graphic designer for Maharajah Coffee for several months and, for over a year, worked as an independent contractor for Maharajah Coffee where ET Fine Art created the Artwork. ET Fine Art also created an oil painting for Maharajah Coffee.

84. ET Fine Art had a reasonable expectation of payment by Maharajah Coffee for all services rendered.

85. Maharajah Coffee knew or should have known that they were receiving the benefit of ET Fine Art's management and graphic design services.

86. Maharajah Coffee knew or should have known that ET Fine Art performed management and graphic design services for Maharajah Coffee with the expectation of payment therefore.

87. Maharajah coffee never paid ET Fine Art the agreed upon $600 per month for ET Fine Art's two months of management services or the $600 per final design for the creation of the Artwork.

88. It would be inequitable to allow Maharajah Coffee to retain the benefit of ET Fine Art's management, graphic design, and artistic services without paying for their value of $8000.

## PRAYER FOR RELIEF

Based on the foregoing, ET Fine Art respectfully requests this Court do the following:

(1) enter judgment in favor of ET Fine Art on all Counts;

(2) order Maharajah Coffee and Singh to pay ET Fine Art compensatory damages of $8000 for the breaches of contracts or, alternatively, unjust enrichments;

(3) order Maharaja Coffee and Singh, jointly and severally, to pay ET Fine Art additional compensatory damages for direct copyright infringement, in a final amount to be determined by the Court;

(4) order Maharajah Coffee to produce an accounting of all profits earned from Maharajah Coffee's use of, reproduction of, distribution of, and any production of any derivative works of the Artwork;

(5) order Maharajah Coffee and Singh, jointly and severally, to disgorge all profits earned from their use, reproduction, and distribution of ET Fine Art's copyrighted Artwork and any derivative works;

(6) declare that Maharajah Coffee and Singh have infringed ET Fine Art's copyrights;

(7) enter preliminary and permanent injunctions prohibiting Maharajah Coffee and Singh, either directly or through their agents, employees, affiliates, or others, from reproducing

16

ET Fine Art's Artwork, distributing the Artwork, and making or preparing derivative works;

(8) award pre- and post-judgment interest at the statutory rate of 12% from the time each cause of action accrued; and

(9) give ET Fine Art any other relief the Court deems just and proper.

Respectfully submitted,
BY COUNSEL

/Andrew P. Connors/
Andrew P. Connors, Esq. (VSB No. 80248)
Jacob P. East, Esq. (VSB No. 96959)
DARKHORSE LAW PLLC
7331 Timberlake Rd., Suite 201A
Lynchburg, VA 24502
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
andrew@darkhorse.law
jacob@darkhorse.law

*Counsel for Plaintiff*
*Elder Taylor Fine Art LLC*

# VERIFICATION

I, Megan Elder-Taylor, verify as follows:

**(1)** I am the sole member and principal of Elder Taylor Fine Art LLC.

**(2)** I have personal knowledge of the facts set forth in this complaint, and if called upon to testify I would competently testify as to those matters stated herein.

**(3)** I verify under penalty of perjury under the laws of the United States of America that the foregoing factual statements are true and correct to the best of my knowledge and belief. Executed on December 30, 2022.

Signed,

_____
Megan Elder-Taylor
Principal, Elder Taylor Fine Art LLC